UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MATTHEW KALE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AERO SIMULATION INC.,<br><br>　　　　　Defendant. | 5:22-CV-05081-KES<br><br><br>**ORDER DENYING MOTION TO AMEND AND GRANTING MOTION TO DISMISS** |

Defendant, Aero Simulation Inc. (Aero), moves to dismiss the complaint in the above-entitled matter for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket 12. Plaintiff, Matthew Kale, opposes the motion to dismiss, and moves to amend his original complaint. Docket 21, 22. Aero opposes the motion to amend, arguing that the proposed amendments would be futile. Docket 23 at 1-2.

**BACKGROUND**

**I.     Factual Background**

As stated in the proposed amended complaint, the relevant facts are as follows:

In autumn of 2021, Kale was employed by Aero as a defense contractor at Ellsworth Air Force Base in South Dakota. *See* Docket 22-1 ¶¶ 13, 14. Aero is a federal contractor and "company that provides services for commercial and military training." *Id.* ¶ 9. On October 7, 2021, Aero announced that it would

require all employees to be fully vaccinated for COVID-19 no later than December 8, 2021, pursuant to the "Department of Air Force's Civilian Force Management Directorate's 22 October 2021 Civilian Employee Mandatory COVID-19 Vaccination Guide." *Id.* ¶ 14. Aero informed employees that failure to comply with the vaccine mandate "would result in administrative and disciplinary action, including termination." *Id.* ¶ 17. Aero also implemented COVID-19 testing requirements for all employees. *Id.* ¶ 18.

Kale objected to receiving the COVID-19 vaccine and to complying with the testing requirements citing "sincerely held religious beliefs." *Id.* ¶ 20. On October 15, 2021, Kale submitted a religious exemption form to Aero requesting exemption from both the vaccination and testing requirements. *Id.* ¶ 21. He stated in his exemption request that "God created [him] with an immune system and [he] will not modify what He has designed. [He] will not violate [his] God-given conscience to defile myself with unwanted intrusions into [his] body, which is a temple of the Holy Spirit." *Id.* ¶ 36. On December 8, 2021, Aero denied Kale's exemption requests due to his unwillingness to test. *Id.* ¶ 23.

On December 13, 2021, Kale again submitted an exemption request, this time formatted as two requests: one requesting a religious exemption from the vaccination requirement and one requesting a religious exemption from the testing requirement. *Id.* ¶ 24. Kale's requests were denied and, on December 14, 2021, he was informed that he was prohibited from returning to work because he remained unvaccinated and would not participate in the testing

schedule. *Id.* ¶ 27. Kale was also informed that he would be forced to surrender his access to the base the next day, December 15, 2021. *Id.*

Kale was placed on indefinite unpaid leave until January 6, 2022, when his employment was terminated. *Id.* ¶¶ 28, 30.

## II.     Procedural Background

Kale filed an employment discrimination complaint with the Equal Employment Opportunity Commission (EEOC) prior to the filing of the instant suit. *Id.* ¶ 33; *see also* Docket 13-1. On June 16, 2022, the EEOC issued Kale a right to sue letter. Docket 22-1 ¶ 33.

On September 14, 2022, Kale filed a pro se complaint with this court alleging "discriminat[ion] . . . on the basis of religion and disability in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the U.S. Constitution, the South Dakota Constitution, the Religious Freedom Restoration Act, and South Dakota state anti-discrimination laws." Docket 1 at 1 (citations omitted). On November 14, 2022, Aero filed a motion to dismiss the complaint for failure to state a claim. Docket 12.

On December 5, 2022, counsel for Kale entered an appearance. Docket 15. On December 19, 2022, Kale filed a memorandum in opposition to Aero's motion to dismiss. Docket 21. The same day, Kale filed a motion to amend the complaint. Docket 22. In his proposed amended complaint, Kale expands the factual details of his original complaint and asserts the following causes of action: (1) violation of the free exercise clause of the First Amendment of the United States Constitution, (2) religious discrimination under South Dakota

Constitution, Article VI § 3, (3) violation of the Religious Freedom Restoration Act (RFRA), (4) violation of Title VII of the Civil Rights Act of 1964, (5) violation of the Americans with Disabilities Act (ADA), (6) religious discrimination in violation of South Dakota anti-discrimination laws, and (7) disability discrimination in violation of South Dakota anti-discrimination laws. Docket 22-1. Aero opposes the motion to amend, arguing that the proposed amended complaint is futile because it fails to cure the deficiencies of the original complaint and cannot survive a motion to dismiss. Docket 23.

## DISCUSSION

Two motions are currently pending before the court: a motion to amend the complaint and a motion to dismiss. *See* Dockets 12, 22. Because granting the motion to amend as to any given count may render the motion to dismiss that count moot, the court considers first the motion to amend as to each count.

### I.     Legal Standard

Because more than 21 days have passed since service of defendant's motion under Rule 12(b)(6), Kale may amend his complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Eighth Circuit has liberally construed this standard, finding that "[u]nless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

non-moving party, or futility of the amendment, leave to amend should be granted.' " *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907-08 (8th Cir. 1999) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).

"Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.' " *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2007) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Federal Law Claims

### A. Disability Discrimination under the ADA

#### 1. Motion to Amend

In his proposed amended complaint, Kale alleges one count of disability discrimination under the ADA. Docket 22-1 ¶¶ 154-68. Aero argues that Kale's amendment is futile because Kale fails to articulate a prima facie case of disability discrimination. Docket 23 at 2. Aero also contends that Kale failed to exhaust his administrative remedies. *Id.* Kale disagrees with both arguments,

arguing that his disability claim both meets the prima facie standard for pleading and that his claim was properly exhausted. Docket 24 at 3.

### a. Whether Kale has made a prima facie showing of disability discrimination

"To establish a prima facie case of disability discrimination, a plaintiff 'must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability.' " *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (quoting *Fenney v. Dakota, Minn. & E.R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003) (internal quotations omitted)). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . .." 42 U.S.C. § 12102(1). The parties do not dispute that Kale suffered an adverse employment action. *See* Docket 13 at 2; Docket 22-1 ¶ 143. Instead, the central dispute concerns whether Kale was disabled under the ADA.[1] *See* Docket 21 at 4; Docket 23 at 2. Kale contends that Aero regarded him as disabled because he was unvaccinated. Docket 21 at 4; *see also* Docket 24 at 2 (incorporating by reference Docket 21). Though Kale also argues that vaccination is not effective against the spread of COVID-19, Kale interprets the relevance of the "regarded

---

[1] Though Aero argues briefly in its motion to dismiss that Kale has not pleaded that he was a qualified employee, *see* Docket 13 at 5, Aero does not raise the argument again in its opposition to Kale's motion to amend. *See* Docket 23. The court thus construes the dispute over Kale's impairment status to be the central point of contention.

as" prong of the ADA as depending on whether Aero believed that unvaccinated status was a disabling condition. *See* Docket 24 at 3. Aero agrees that it regarded Kale as unvaccinated but argues that unvaccinated status is not a disability under the ADA. Docket 13 at 5.

" 'Regarded as' disability can occur in two ways: (1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an *actual* impairment substantially limits one or more major life activity." *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) (emphasis in original). In either circumstance, "[r]egarding an employee as having a limitation that is not itself a disability cannot constitute a perception of a disability." *Breitzkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (2006). Thus, the question before the court is whether unvaccinated status is a disability under the ADA.

The parties do not cite, nor is the court aware of, any case in which the Eighth Circuit has addressed whether unvaccinated status alone can constitute a disability under the ADA. But following vaccine mandates in response to the COVID-19 pandemic, a number of district courts have addressed the issue and found that unvaccinated status is not a disability. *See, e.g., Librandi v. Alexion Pharmaceuticals, Inc.*, 2023 WL 3993741, at *6 (D. Conn. June 14, 2023); *Shane v. Bio-Techne Corp.*, 2023 WL 3936638, at *8 (D. Minn. June 9, 2023) ("[Plaintiff] cannot claim 'regarded as' discrimination under . . . the ADA . . . based on his vaccination choice."); *Schneider v. County*

*of Fairfax*, 2023 WL 2333305, at *5 (E.D. Va. Mar. 2, 2023), *aff'd* 2023 WL 5524752 (4th Cir. Aug. 28, 2023) (finding that employer treating employee as if he is unvaccinated "is not the same as believing [he] has a physical or mental impairment") (alteration in original) (quoting *Jorgenson v. Conduent Transport Solutions, Inc.*, 2023 WL 1472022, at *4 (D.Md. Feb. 2, 2023), *aff'd* 2023 WL 4105705 (4th Cir. June 21, 2023)); *Speaks v. Health Systems Management, Inc.*, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort."). As exemplified by *Speaks*, the majority of courts have held that vaccination status "reflects a personal *choice*" that "cannot be considered an impairment under the ADA." 2022 WL 3448649, at *5 (emphasis in original). This is because, unlike an impairment, vaccination status is fully within the control of the employee. *Id.*

Additionally, the Eleventh Circuit reached a parallel issue in the case *E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1315-18 (11th Cir. 2019). In *STME*, Kimberly Lowe, a massage therapist, was terminated by her employer after she took a trip to Ghana against the employer's advisement. *Id.* at 1310-11. The employer mistakenly believed that Ghana was undergoing an outbreak of Ebola and that Lowe would contract and spread the disease if she traveled to West Africa. *Id.* at 1311. Lowe filed a charge of discrimination with the EEOC following her termination, alleging – among other claims – that the employer regarded her as disabled "due to its belief that she would contract Ebola in the future." *Id.* at 1315. The Eleventh Circuit dismissed Lowe's claim for disability

discrimination, analyzing the language of the ADA and concluding that "Section 12102(3)(A) [of the ADA] does not, by its terms, extend to an employer's belief that an employee might contract or develop an impairment in the future." *Id.* at 1316. Thus, the court "conclude[d] that the disability definition in the ADA does not cover th[e] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future due to the voluntary conduct of overseas travel." *Id.* at 1315.

Like the claim in *STME*, Kale's claim concerns a future risk of contracting a contagious illness and an employee's refusal to mitigate that risk, in this case by vaccination. *See* Docket 22-1 ¶ 2 (stating that Aero's concern was the potential "asymptomatic deadly spread of COVID-19 to fellow employees"). This court agrees with the Eleventh Circuit that such circumstances do not qualify as a disability under the text of the Act, because the language of the ADA requires that the alleged impairment be existing at the time of the adverse action, and not only a future result of voluntary conduct. *See STME*, 938 F.3d at 1315. This court, therefore, joins the majority of district courts in finding that unvaccinated status is not a disability for the purposes of the ADA.

Though Kale argues that Aero assumed his unvaccinated status rendered him "necessarily immune-deficient and thereby unable to safely perform his job duties in the workplace[,]" Kale does not allege any facts that would demonstrate such an assumption by Aero. *See* Docket 21 at 4; *see also* Docket 24 at 2 (incorporating by reference Docket 21). Instead, Kale acknowledges that the vaccine mandate applied to all employees. Docket 22-1

9

¶ 2. If the court were to accept that Aero required Kale to be vaccinated because of a perceived impairment, then the court must accept that Aero considered all employees impaired, as all employees were required to be vaccinated or to seek an exception. *See id.* Absent any further allegations to support this contention, the court finds implausible the idea that Aero believed its entire workforce to be impaired. *See Jorgenson*, 2023 WL 1472022, at *4 (finding implausible that the employer believed entire workforce was impaired); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.") Kale has accordingly failed to allege that Aero regarded him as disabled, and his proposed amended complaint is futile as to his claim of disability discrimination under the ADA. Kale's motion to amend is, thus, denied as to the fifth cause of action. *See* Docket 22-1 at 28.

### b. Whether Kale properly exhausted his disability claim

The court declines to consider whether Kale's claim for disability discrimination was properly exhausted at this time because, regardless of procedural history, Kale has failed to articulate a prima facie case of discrimination under the ADA.

### 2. Motion to Dismiss

Having reviewed the original complaint, the court finds no additional facts to support that Kale was disabled under the ADA. *See* Docket 1. Because the same pleading failure exists in Kale's original complaint, the court grants

Aero's motion to dismiss as to Kale's claim for disability discrimination under the ADA.

### B. Religious Claims under Title VII, First Amendment, and RFRA

The court next turns to Kale's federal-law claims based on religious belief. Kale raises in his proposed amended complaint three claims based on alleged violations of his religious freedom: one arising under Title VII, one arising under the First Amendment, and one arising under RFRA. Docket 22-1 at 20-28. To succeed on any of these claims, Kale must allege as a threshold matter that he had a bona fide religious belief and that this belief was burdened by an employment requirement.[2] *See Kennedy v. Bremerton School Dist.*, 142 S.Ct. 2407, 2421-22 (2022) ("[A] plaintiff may carry the burden of proving a free exercise violation [of the First Amendment] . . . by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.' ") (citation omitted); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 705 (2014) ("RFRA prohibits the 'Government [from] substantially burden[ing] a person's exercise of religion

---

[2] To succeed on a First Amendment or RFRA claim, Kale must also allege state action. *See* U.S. Const., Amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."); 42 U.S.C. § 2000bb-1(a) ("Government shall not substantially burden a person's exercise of religion . . . ."). Aero alleges that it is a private employer and not a state actor. *See* Docket 13 at 11. But, because Kale alleges that Aero was a state actor due to its federal contract work, the court assumes without deciding that Kale has sufficiently pleaded that Aero's employment requirements constitute state action. Docket 22-1 ¶ 13; *see also Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295-96 (2001) (holding that test for state action is fact specific).

even if the burden results from a rule of general applicability[.]") (emphasis omitted); *Jones v. TEK Industries*, 319 F.3d 355, 359 (8th Cir. 2003) ("To establish a prima facie case of religious discrimination under Title VII, [plaintiff] must show that [he] ha[s] a bona fide religious belief that conflicts with an employment requirement . . ."). Because Aero disputes whether Kale has alleged a prima facie case in any of his religious claims, the court first considers whether Kale has alleged a bona fide religious belief that was burdened by an employment requirement. *See* Docket 13 at 9.

Kale alleges two possible burdens on his religious belief, the first of which concerns Aero's mandate that all employees be vaccinated against COVID-19 and the second of which concerns Aero's alternative requirement that unvaccinated employees test weekly for COVID-19. *See* Docket 22-1 at 5-7. The court addresses the vaccination mandate first.

### 1. Vaccine Mandate

Kale asserts that complying with Aero's COVID-19 vaccine mandate would conflict with his religious belief that "God created [him] with an immune system and [he] will not modify what He has designed." *Id.* ¶ 36. Kale further states that "taking a biologic that alters mitochondrial RNA or cellular DNA is in violation of God's will and laws." *Id.* ¶ 35. Aero does not dispute the sincerity of this proffered belief and so the only question is whether this belief was burdened by Aero's vaccine mandate.

As stated in the proposed amended complaint, Aero implemented a vaccine requirement in October, 2021. *Id.* ¶ 14. But the mandate was not

without exceptions. *See id.* ¶ 15. Aero's policy acknowledged unvaccinated staff and required that, "regardless of the reason" for vaccination status, unvaccinated employees "will be subject to COVID-19 screening testing at least weekly[.]" *Id.* Additionally, Kale admits that his first request for an exemption to the policy was not denied for a failure to become vaccinated but "due to his unwillingness to test." *Id.* ¶ 23. Similarly, his second request was denied due to his unwillingness to be vaccinated or to comply with testing requirements. *Id.* ¶ 27.

Accepting as true the allegations as stated in the complaint, Aero required Kale to be vaccinated against COVID-19 *or* to test weekly for COVID-19. *See id.* ¶ 15. Because Kale could comply with Aero's mandate without violating his religious beliefs by receiving the COVID-19 vaccine, Kale has not alleged a burden on his religion due to his objection to the vaccine alone. Instead, Kale must allege sufficient facts to show that Aero's alternative to vaccination – the testing requirement – would also burden his religious belief.

### 2. Testing Mandate

Though the proposed amended complaint contains extensive allegations surrounding the COVID-19 vaccine, the allegations about the COVID-19 testing mandate are relatively sparse. Kale simply proposes that he "objected to weekly testing for [COVID-19] on the same grounds[]" as he objected to vaccination. *Id.* ¶ 37. Those grounds, as stated above, are that "God created [Kale] with an immune system and [he] will not modify what He has designed." *Id.* ¶ 36. Further, Kale asserts that he "will not violate [his] God-given conscience to

defile [him]self with unwanted intrusions into [his] body, which is a temple of the Holy Spirit." *Id.* Kale does not allege, and the court does not find plausible, that COVID-19 testing would "modify" the immune system. *See Iqbal*, 556 U.S. at 670. Thus, for the testing requirement to violate Kale's proffered religious belief, he must allege facts showing that complying with the testing requirement would constitute an "unwanted intrusion into [his] body[.]" *Id.*

Having carefully reviewed the proposed amended complaint, the court finds no such factual allegations. *See generally* Docket 22-1. At no point does Kale describe what testing would entail or what degree of "intrusion" would be required. Though the court acknowledges that some medical testing *could* be intrusive, facts to demonstrate this intrusion are not present in the proposed amended complaint, and the court is "not required to assume facts that are not alleged[.]" *Williams v. TSI Global*, 2022 WL 3026929, at *1 (Aug. 1, 2022) (citing *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004)). As such, Kale has not shown that the testing requirement burdened his religious belief against bodily intrusions. And because complying with the testing requirement would exempt Kale from vaccination, Kale has also not demonstrated that the broader COVID-19 policies burdened his religious belief. Kale has therefore failed to allege a prima facie case on his claims based on religious observance. The court denies the motion to amend on these claims – counts one, three, and four – because the proposed amendments are futile.

### C. Motion to Dismiss

Because the same pleading insufficiencies exist in the original complaint as to the federal-law claims, *see* Docket 1, the court grants Aero's motion to dismiss as to Kale's claims under the First Amendment, Title VII, and RFRA.

### III. State-Law Claims

Lastly, the court considers the state-law claims for disability discrimination and religious discrimination under SDCL § 20-13-10 and for religious discrimination in violation of the South Dakota Constitution. Docket 1; Docket 22-1 ¶¶ 116-20, 169-90. Because this case is before the court based on federal question jurisdiction, *see* Docket 22-1 ¶ 10, Kale's state-law claims implicate this court's supplemental jurisdiction. Under 28 U.S.C. § 1367, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy . . . ." Though the court agrees that Kale's state-law claims form part of the same "case or controversy," because all other federal-law claims have been dismissed, the court is unable to exercise its supplemental jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Kale's state law claims are accordingly dismissed for lack of jurisdiction.

### CONCLUSION

Because neither Kale's proposed amended complaint nor his original complaint articulate federal-law claims which could survive a motion to dismiss under Rule 12(b)(6), it is ORDERED

That Kale's motion to amend (Docket 22) is DENIED and Aero's motion to dismiss (Docket 12) is GRANTED as to Kale's federal-law claims. Further, because the court does not have jurisdiction over the remaining state-law claims, those claims are dismissed without prejudice.

Dated September 26, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE